Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| Pablo Rodríguez Feliciano<br><br>**Apelado**<br><br>V.<br><br>Gauss Research Laboratory, Inc.<br><br>**Apelante** | TA2026AP00394 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil. Núm. SJ2025CV09666<br><br>Sobre: Despido Injustificado (Ley Núm. 80) y Otros |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 13 de mayo de 2026.

El 17 de abril de 2026, Gauss Research Laboratory Inc. (Gauss o el apelante) compareció ante nos mediante *Apelación* y solicitó la revisión de una *Sentencia* que se emitió el 6 de abril de 2026 y se notificó el 7 de abril de 2026 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI concluyó que la *Querella* presentada por el Sr. Pablo Rodríguez Feliciano (señor Rodríguez o el apelado) fue correctamente presentada en la Sala de San Juan. Determinó que a Gauss le aplicaba el término de diez (10) días para contestar la *Querella* y, al comparecer tardíamente, declaró Ha Lugar la solicitud de sentencia en rebeldía presentada por el apelado. En consecuencia, declaró Ha Lugar la *Querella* y ordenó el pago de mesada, salarios dejados de percibir y honorarios de abogado.

Por los fundamentos que expondremos a continuación, modificamos el dictamen apelado y así modificado confirmamos.

I.

El 21 de octubre de 2025, el señor Rodriguez presentó una *Querella* sobre despido injustificado y salario devengado dejado de percibir al amparo de la Ley Núm. 2, *infra*, contra Gauss, una corporación doméstica sin fines de lucro dedicada al ámbito educativo y científico, **ubicada en San Juan, Puerto Rico**, y operadora de .PR como registry de dominios de Internet en Puerto Rico.[1] Alegó que laboró para Gauss desde octubre de 2003 hasta el año 2010 y que posteriormente regresó en abril de 2014 como *Chief Strategy Officer*. Indicó que sus funciones incluían ventas, mercadeo y representación del patrono en múltiples gestiones profesionales. Sostuvo que durante sus años de servicio fue un empleado dispuesto, comprometido y que desempeñó sus labores con excelencia.

Expuso que entre marzo y abril de 2025 el patrono le comunicó que, ante su despido inminente, proponía negociar un contrato de cesión mediante el cual Gauss le transferiría la autoridad como "registrar" del registry .pr a cambio de su mesada. Señaló que, el 21 de abril de 2025, el presidente de Gauss remitió una carta a la Secretaría del *Country Code Names Supporting Organization* informando que, aunque él ya no era empleado, autorizaba y endosaba las actividades que este realizara como operador de código de país.

No obstante, alegó que nunca medió un despido formal en ese momento, por lo que continuó laborando de buena fe mientras proseguían las conversaciones y en consideración a que representaba a Gauss ante sus clientes. Añadió que las negociaciones no prosperaron porque el patrono se negó a reconocer elementos requeridos para concretar la transacción. Sostuvo que,

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

posteriormente, el Sr. Pedro René Moreno de Ayala García, accionista y único miembro de la Junta de Directores de Gauss y el Sr. Oscar Moreno de Ayala Díaz, *Chief Executive Officer* de Gauss, dejaron de contestarle llamadas y mensajes.

Indicó que continuó trabajando hasta el 27 de mayo de 2025, fecha en que recibió por correo electrónico una carta suscrita por el Lcdo. Esteban Andújar Aroca notificándole su despido con efecto inmediato. Además, alegó que, el último pago recibido fue el 17 de abril de 2025, correspondiente al salario del periodo del 8 al 21 de abril de 2025 y a balances de licencias de vacaciones, enfermedad y bono de Navidad. Sostuvo que devengó $9,350.44 en salarios no pagados. Asimismo, alegó que su despido fue injustificado e ilegal, en violación a la Ley Núm. 80, y que el patrono, aun reconociendo la falta de justa causa al iniciar conversaciones sobre la mesada, no lo indemnizó conforme a ley. En virtud de lo antes expuesto, como remedio, reclamó una mesada total de $53,844.72, desglosada en tres meses de sueldo y dos semanas de sueldo por cada año de servicio, más $8,076.71 por honorarios de abogado, para un total de $61,921.43.

El emplazamiento dirigido a Gauss fue debidamente diligenciado el 26 de noviembre de 2025.[2] Posteriormente, el señor Rodríguez presentó una *Solicitud para que se dicte Sentencia contra la Parte Querellada.*[3] En esta, señaló que, conforme a la Sección 3 de la Ley Núm. 2, *infra*, la parte querellada disponía de diez (10) días desde la notificación para contestar la *Querella*, término que venció el 8 de diciembre de 2025 sin que compareciera. Ante ello, sostuvo que, de conformidad con la Sección 4 de la Ley Núm. 2, *infra*, procedía dictar Sentencia concediendo el remedio solicitado en la *Querella*.

---

[2] *Véase*, Entrada Núm. 5, SUMAC TPI.
[3] *Véase*, Entrada Núm. 6, SUMAC TPI.

Así las cosas, el 10 de diciembre de 2025, Gauss presentó una *Moción Solicitando Traslado del Caso.*[4] En síntesis sostuvo que el señor Rodríguez presentó la *Querella* en el Tribunal Superior de San Juan cuando debió haberla radicado en el distrito judicial de Guaynabo, por ser este su lugar de residencia y donde también realizaba su trabajo. A esos efectos, citó la Sección 1 de la Ley Núm. 2, *infra*, la cual dispone que el obrero o empleado puede presentar su reclamación en el lugar donde realizó el trabajo o donde reside.

Argumentó que, según surge de la *Querella*, el apelado reside en el municipio de Guaynabo y trabajaba desde su residencia, por lo que ese era el único distrito judicial donde podía presentar su reclamación. Añadió que la presentación en San Juan tuvo el propósito de reducir artificialmente el término para contestar la *Querella*, ya que, de haberse presentado en el distrito correcto, tendría quince (15) días para contestar.

A su vez, ese mismo día, a saber, el 10 de diciembre de 2025, el apelante presentó su *Contestación a la Querella.*[5] Además, presentó una *Oposición a Solicitud de Anotación de Rebeldía.*[6] Reiteró que la *Querella* fue presentada en el Tribunal Superior de San Juan cuando, a su juicio, debió radicarse en el distrito judicial de Guaynabo, por ser el municipio donde el apelado reside y desde donde alegadamente trabajaba. A esos efectos, invocó nuevamente la Sección 1 de la Ley Núm. 2, *infra*, sosteniendo que la reclamación debía presentarse en el lugar donde se realizó el trabajo o donde reside el empleado.

Además, argumentó que el señor Rodriguez presentó el caso en San Juan con el propósito de reducir artificialmente el término para contestar la *Querella* de quince (15) días a diez (10) días. Señaló

---

[4] *Véase*, Entrada Núm. 7, SUMAC TPI.
[5] *Véase*, Entrada Núm. 8, SUMAC TPI.
[6] *Véase*, Entrada Núm. 9, SUMAC TPI.

que, aunque el emplazamiento fue expedido el 22 de octubre de 2025, no fue diligenciado hasta el 26 de noviembre de 2025, el día antes del receso de Acción de Gracias, lo que alegadamente dificultó conseguir representación legal a tiempo. Indicó que presentó la moción solicitando el traslado del caso el 10 de diciembre de 2025, al entender que el término correcto para contestar era de quince (15) días. En consecuencia, sostuvo que la solicitud de anotación de rebeldía no procedía, ya que presentó su contestación dentro del término que entendía aplicable. Por ello, solicitó que se denegara la solicitud de anotación de rebeldía.

En respuesta a los escritos de la apelante, el 16 de diciembre de 2025, el señor Rodriguez presentó una *Moción en Cumplimiento de Orden* [...].[7] Expuso que Gauss fue emplazada el 26 de noviembre de 2025 con copia de la *Querella* presentada en la Sala Superior de San Juan. Señaló que el emplazamiento advertía expresamente que el término para contestar era de diez (10) días, conforme a la Ley Núm. 2, *infra*, por lo que cualquier solicitud de la parte querellada debía presentarse no más tarde del 8 de diciembre de 2025. Sostuvo que toda presentación posterior no debía ser considerada por el Tribunal.

En cuanto a la moción solicitando traslado presentada por Gauss, argumentó que carecía de fundamento. Indicó que, aunque por la naturaleza de sus funciones podía trabajar remotamente desde distintos lugares, su centro de trabajo y oficina estaban ubicados en las instalaciones del patrono en San Juan, desde donde laboraba según las necesidades de la empresa. Añadió que desde principios de 2025 el patrono requirió labores presenciales, por lo que resultaba incorrecto alegar que el lugar de trabajo era Guaynabo.

---

[7] *Véase*, Entrada Núm. 9, SUMAC TPI.

Además, sostuvo que la Sección 1 de la Ley Núm. 2, *infra*, utilizaba lenguaje permisivo que confería al empleado la facultad de escoger entre los foros autorizados según su residencia o lugar de trabajo. En ese sentido, alegó que le correspondía exclusivamente a él seleccionar el foro donde presentar la reclamación. Añadió que permitir el traslado solicitado por Gauss para beneficiarse de un término mayor para contestar sería contrario al propósito sumario y protector de la Ley Núm. 2, *infra*.

Además, señaló que la parte apelante, en su oposición a la anotación de rebeldía, reiteró el mismo argumento sin sustento jurídico. Aclaró que la *Querella* no fue presentada en San Juan para reducir términos artificialmente, sino porque allí ubicaba su centro de trabajo y las oficinas del patrono. Indicó que, aunque pudo presentar la reclamación en Bayamón, optó por San Juan, donde también fue emplazada Gauss.

Finalmente, alegó que Gauss presentó su contestación fuera del término aplicable e invocó jurisprudencia sobre el carácter mandatorio de la rebeldía una vez vencido el término para contestar sin justificación adecuada. Por ello, solicitó que se declarara Ha Lugar la solicitud para dictar sentencia contra la parte apelante y cualquier otro remedio procedente en derecho.

Junto a esta moción, el señor Rodriguez anejó una declaración jurada en la cual expresó que revisó la moción solicitando traslado del caso, la Contestación a Querella y la Oposición a solicitud de anotación de rebeldía presentadas por Gauss.[8] Afirmó que durante sus años de servicio para dicha entidad su centro de trabajo estuvo ubicado en la calle Georgetti #4 en San Juan, Puerto Rico, lugar donde tenía su oficina y ejercía sus funciones. Añadió que, aunque por la naturaleza de su trabajo en

---

[8] Íd.

ocasiones rendía labores fuera de la oficina, su centro de trabajo siempre fue esa dirección en San Juan.

Asimismo, indicó que a principios del año 2025 Gauss por conducto del Sr. Pedro R. Moreno de Ayala García, remitió comunicaciones por correo electrónico y mediante un grupo de WhatsApp requiriendo al personal realizar sus labores de manera totalmente presencial en la calle Georgetti #4 en San Juan, Puerto Rico.

Posteriormente, el 17 de diciembre de 2025, Gauss presentó una *Réplica a Moción en Cumplimiento de Orden*.[9] Reiteró que la *Querella* fue presentada en el Tribunal Superior de San Juan cuando, a su juicio, debió radicarse en el distrito judicial de Guaynabo, por ser el municipio donde el apelado reside y donde alegadamente trabajaba desde su residencia. Señaló que en la *Querella* no se indicó el lugar donde el apelado trabajaba, dato que consideró determinante para establecer el distrito judicial correspondiente y el término aplicable para contestar bajo la Ley Núm. 2, *infra.*

Argumentó que, en reclamaciones al amparo de la Ley Núm. 2, *infra*, el lugar de presentación del caso afectaba el derecho del patrono al debido proceso de ley, ya que de ello dependía si el término para contestar era de diez (10) o quince (15) días. Indicó que por esa razón presentó una moción solicitando el traslado del caso, al entender que la *Querella* se radicó en San Juan con el propósito de reducir artificialmente el término para contestar.

Además, sostuvo que posteriormente presentó su contestación a la *Querella* y una oposición a la solicitud de anotación de rebeldía. Añadió que, tras una orden del Tribunal, el apelado reconoció en una moción que trabajaba desde la casa, aunque alegó

---

[9] *Véase*, Entrada Núm. 14, SUMAC TPI.

también que su lugar de trabajo eran las oficinas del apelante. Sin embargo, señaló que el señor Rodriguez apenas acudía a dichas facilidades. También sostuvo que la declaración jurada presentada por el señor Rodriguez admitía que trabajaba desde su residencia.

Asimismo, alegó que la conducta procesal del apelado evidenciaba falta de buena fe, al intentar prevalecer mediante estrategias dirigidas a reducir el término para contestar. En ese contexto, citó jurisprudencia sobre el principio general de buena fe en el ordenamiento jurídico. Reiteró que no fue casualidad que el emplazamiento, expedido el 22 de octubre de 2025, se diligenciara el 26 de noviembre de 2025, el día antes del receso de Acción de Gracias, lo que alegadamente dificultó conseguir representación legal dentro del término.

En consecuencia, sostuvo que la solicitud de anotación de rebeldía no procedía, ya que presentó su contestación dentro de los quince (15) días que entendía aplicables. En la alternativa, planteó que existía una controversia de hecho medular sobre dónde trabajaba el señor Rodriguez, por lo que solicitó oportunidad para presentar una declaración jurada o que se señalara una vista evidenciaria para dilucidar ese asunto.

Evaluados los escritos de las partes, el 6 de abril de 2026, el TPI dictó una *Sentencia* que se notificó el 7 de abril de 2026.[10] En primer lugar, realizó las siguientes determinaciones de hechos:

1. La parte querellada, Gauss Research Laboratory Inc., está registrada en el Registro de Corporaciones con el número 177988. Es una corporación sin fines de lucro, doméstica, organizada bajo las leyes de Puerto Rico, cuyo propósito se circunscribe al área de la educación y el ámbito científico. Posee capacidad para demandar y ser demandada. Como tal, opera .PR, Puerto Rico Top Level Domain, que funge como "registry" de dominios de Internet desde el año 1989. Su agente residente es el Sr. Pedro R. Moreno de Ayala García. Ubica físicamente en la calle Georgetti #4, Río Piedras, San Juan, Puerto Rico 00925, pero su dirección postal es PO Box

---

[10] *Véase*, Entrada Núm. 16, SUMAC TPI.

21613, San Juan, Puerto Rico, 00931 y su número de teléfono el 787-753-5869.

2. El querellante, el Dr. Pablo Rodríguez Feliciano, comenzó a trabajar sin tiempo determinado y a tiempo completo para Gauss Research Laboratory Inc., en octubre del 2003 hasta el año 2010. Posteriormente regresó formalmente en el mes de abril del año 2014 como Chief Strategy Officer.

3. El Dr. Pablo Rodríguez Feliciano, se desempeñó como vicepresidente de la compañía y como Chief Strategy Officer.

4. Aunque el Dr. Pablo Rodríguez Feliciano podía trabajar desde distintos lugares dado a la naturaleza de su trabajo, su lugar de empleo estaba sito en la calle Georgetti #4 en el Río Piedras, municipio de San Juan.

5. Durante los años de servicio del Dr. Pablo Rodríguez Feliciano para Gauss Research Laboratory, Inc., el centro de trabajo del querellante estuvo ubicado en la calle Georgetti #4 en San Juan, Puerto Rico.

6. El Dr. Pablo Rodríguez Feliciano reside en el pueblo de Guaynabo.

7. Para el periodo entre marzo y abril de 2025, Gauss se acercó al Dr. Rodríguez Feliciano para sostener conversaciones con el fin de negociar su mesada.

8. El Dr. Pablo Rodríguez Feliciano fue empleado de Gauss Researcb Laboratory, Inc. hasta el 27 de mayo de 2025 cuando recibió vía correo electrónico carta suscrita por el Lcdo. Esteban Andújar Aroca, donde se le informaba su despido con efecto inmediato al recibo de dicha comunicación y no indemnizó al querellante según establece la Ley 80.

9. Gauss Researcb Laboratory, Inc. es un patrono, según definido por ley.

Luego, conforme a estas determinaciones de hechos y el derecho aplicable determinó que estaba correctamente alegado en la *Querella* y sostenido mediante declaración jurada que el señor Rodríguez residía en Guaynabo y trabajó para Gauss, cuyas facilidades estaban ubicadas en San Juan. Añadió que esa información también fue reconocida por la parte apelante en su *Contestación a Querella.* Por ello, resolvió que la acción fue presentada en una sala con competencia y jurisdicción, y que no existía fundamento jurídico para trasladar el caso ni para aplicar el

término de quince (15) días pretendido por Gauss. Expresó que nada en la legislación laboral obligaba al apelado a presentar su reclamación en Guaynabo y que conceder el traslado solicitado desvirtuaría la política pública laboral y el mandato de la Ley Núm. 2, *infra.*

Resuelto lo anterior, examinó las consecuencias de no contestar la *Querella* dentro del término legal. Concluyó que Gauss tenía hasta el 8 de diciembre de 2025 para presentar su alegación responsiva y que, al no hacerlo ni solicitar prórroga, procedía aplicar la Sección 4 de la Ley Núm. 2, *infra*, la cual dispone que se dicte sentencia contra el querellado concediendo el remedio solicitado. Citó jurisprudencia reconociendo que dicha disposición limitaba la discreción judicial y que, al amparo de la Ley Núm. 2, *infra*, el caso debía verse en rebeldía cuando no se contestara en la forma y término requeridos.

Asimismo, indicó que la aplicación de la ley no constituía violación al debido proceso de ley, aun cuando los términos procesales podían resultar onerosos para el patrono. Añadió que tampoco constituía mala fe emplazar dentro del término permitido ni que un empleado presentara su reclamación en el distrito donde laboró y ubicaban las oficinas del patrono.

Finalmente, concluyó que el señor Rodríguez laboró para Gauss hasta el 27 de mayo de 2025, cuando fue despedido mediante correo electrónico sin ser indemnizado conforme a la Ley Núm. 80. Determinó que Gauss incumplió con contestar dentro del término de diez (10) días, por lo que declaró Ha Lugar la solicitud de sentencia presentada por el apelado y Ha Lugar la *Querella* radicada el 21 de octubre de 2025. En consecuencia, ordenó a Gauss pagar $53,844.72 por concepto de mesada, $9,350.44 por salarios devengados dejados de percibir y $8,076.71 por honorarios de abogado. Asimismo, dictó sentencia en rebeldía, dio por admitidos

los hechos bien alegados en la *Querella* y concluyó que los remedios solicitados fueron debidamente alegados y justificados.

Inconforme con este dictamen, el 17 de abril de 2026, Gauss presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **Incurrió en error el Honorable Tribunal de Primera Instancia emitir una sentencia en el procedimiento sumario y concluir que el querellado radicó fuera de término a pesar de que bajo la ley tenía 15 días para hacerlo.**

Atendido el recurso, el 20 de abril de 2026, emitimos una *Resolución* concediéndole al apelado hasta el 30 de abril de 2026 para presentar su oposición al recurso. Oportunamente, el señor Rodriguez presentó su *Alegato en Oposición a Apelación* y negó que el TPI cometiera el error que Gauss le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

## II.

La Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA sec. 3120, *et seq.*, estableció un procedimiento sumario para la adjudicación de pleitos laborales. El objetivo de dicho proceso es proveer un mecanismo procesal judicial que logre la rápida consideración y adjudicación de las querellas presentadas por los obreros o empleados, principalmente en casos de reclamaciones salariales y beneficios. *Rodríguez Gómez v. Multinational Ins.*, 207 DPR 540, 569 (2021). En armonía con ese propósito, en *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921 (2008), el Tribunal Supremo reiteró que la naturaleza sumaria del procedimiento es su característica esencial, lo que impone a los tribunales el deber de promover diligencia y prontitud en la tramitación de estas reclamaciones.

Para que el trabajador pueda acogerse a este procedimiento especial, debe invocar la Ley Núm. 2, *supra*, en su querella y escoger el foro correspondiente, ya sea donde reside o donde laboraba. A esos efectos, la Sección 1 del estatuto, 32 LPRA sec. 3118, dispone lo siguiente:

> Siempre que un obrero o empleado tuviere que reclamar de su patrono cualquier derecho o beneficio, o cualquier suma por concepto de compensación por trabajo o labor realizados para dicho patrono, o por compensación en caso de que dicho obrero o empleado hubiere sido despedido de su empleo sin causa justificada, **podrá comparecer ante la Sala Superior del Tribunal de Primera Instancia, del lugar en que realizó el trabajo o en que resida el obrero o empleado en la fecha de la reclamación** y formular contra el patrono una querella en la cual se expresarán por el obrero o empleado los hechos en que se funda la reclamación.

De la letra del estatuto se desprende que el legislador, al utilizar el término "podrá", reconoce la facultad del empleado, quien se encuentra en una posición desventajada frente al patrono, de escoger el foro que le resulte más conveniente, en protección de sus intereses.

Por otro lado, el carácter sumario del procedimiento se refleja en los términos estrictos que rigen la contestación de la querella. En ese sentido, la Sección 3 de la Ley Núm. 2, 32 LPRA sec. 3119, establece lo siguiente:

> El secretario del tribunal notificará a la parte querellada con copia de la querella, apercibiéndole que deberá radicar su contestación por escrito, con constancia de haber servido copia de la misma al abogado de la parte querellante o a ésta si hubiere comparecido por derecho propio, **dentro de diez (10) días después de la notificación, si ésta se hiciere en el distrito judicial en que se promueve la acción, y dentro de quince (15) días en los demás casos,** y apercibiéndole, además, que si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle. (Énfasis suplido).

No cabe duda, por su claridad, de que la referida sección del estatuto dispone que el patrono deberá contestar la querella por escrito dentro de los diez (10) días siguientes a su notificación. *Vizcarrondo Morales v. MVM, Inc.*, supra, págs. 929-930. De ello

surge el deber ministerial del tribunal de cumplir estrictamente con el procedimiento sumario dispuesto en la ley, pues carece de jurisdicción para extender dicho término *motu proprio*. Íd, pág. 930. Asimismo, toda solicitud de prórroga para contestar la querella debe presentarse dentro del término original para contestar. Íd.

En otras palabras, el tribunal no puede conceder una extensión para contestar la querella, salvo que medie una moción de prórroga juramentada presentada oportunamente y que exponga fundamentos suficientes. Íd. Aunque en circunstancias extraordinarias pudiera justificarse cierta flexibilidad procesal, la discreción judicial está limitada por el mandato expreso de la ley. Íd., pág. 936. Así, vencido el término sin contestación ni solicitud de prórroga, el tribunal únicamente conserva jurisdicción para anotar la rebeldía y dictar sentencia. Íd. A esos efectos, la Sección 4 del mismo estatuto, 32 LPRA sec. 3121, establece la consecuencia jurídica del incumplimiento con dicho término, al disponer lo siguiente:

> Si el querellado no radicara su contestación a la querella en la forma y en el término dispuestos en la Sección 3 de esta Ley, el juez dictará sentencia contra el querellado, a instancias del querellante, concediendo el remedio solicitado. La sentencia a esos efectos será final y de la misma no podrá apelarse.

No obstante, el Tribunal Supremo aclaró que dicha sección debe interpretarse integralmente. *Marín v. Fastening Systems, Inc.*, 142 DPR 499, 508 (1997). Aunque la disposición indica que la sentencia será final y no apelable, también reconoce el derecho de la parte afectada a solicitar revisión de los procedimientos habidos en instancia dentro de los diez (10) días siguientes a la notificación de la sentencia. Íd.

De igual forma, el Tribunal Supremo reiteró que la consecuencia de no contestar oportunamente, sin acogerse a prórroga o sin que del expediente surjan causas justificadas para la

dilación, es la anotación de la rebeldía y la concesión del remedio solicitado, sin más citar ni oír al querellado. *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 935. Sin embargo, una sentencia en rebeldía no garantiza per se un resultado favorable al querellante. *Continental Ins. Co. v. Isleta Marina*, 106 DPR 809, 817 (1978). Su efecto jurídico consiste en tener por admitidos los hechos bien alegados en la querella. Íd.

Por ello, las alegaciones conclusorias, las conclusiones de derecho y los señalamientos generales no bastan para sostener una adjudicación favorable a favor del demandante o querellante. *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 937. En consecuencia, para que proceda una sentencia en rebeldía bajo la Ley Núm. 2, *supra*, el empleado u obrero debe alegar o probar hechos que sustenten su derecho al remedio reclamado. *Ocasio v. Kelly Servs.*, 163 DPR 653, 672 (2005). En ese análisis, el TPI debe determinar si de las aseveraciones de la querella "[s]urge una causa de acción a favor del recurrido y que procede, entonces, dictar sentencia en rebeldía en contra del demandado". Íd., pág. 681.

Finalmente, la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R 45.1, establece que la anotación de rebeldía tendrá el efecto de dar por admitidas las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b) de Procedimiento Civil, 32 LPRA Ap. V, R.45.2(b). Su propósito es desalentar tácticas dilatorias en el litigio. *González Pagán et al. v. SLG Moret-Brunet*, 202 DPR 1062 (2019). Por su parte, la Regla 45.2 de Procedimiento Civil, *supra*, dispone que, cuando sea necesario determinar daños, corroborar alegaciones mediante prueba o investigar cualquier otro asunto, el tribunal deberá celebrar las vistas que estime necesarias. *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807, 824 (2023); *Continental Ins. Co. v. Isleta Marina, supra*, págs. 816-817.

III.

En su único señalamiento de error, Gauss sostuvo que el TPI erró al emitir Sentencia en el procedimiento sumario y concluir que contestó fuera de término, pues alegadamente tenía quince (15) días para comparecer según la Ley Núm. 2, *supra*. Asimismo, argumentó que tampoco procedía dictar sentencia respecto a las reclamaciones de despido injustificado y salarios, ya que, a su juicio, las alegaciones de la *Querella* eran meramente conclusorias y no proveían la especificidad necesaria para sostener dichas causas de acción. En particular, señaló que, tras las enmiendas introducidas por la Ley Núm. 4-2017 a la Ley Núm. 80, el peso de la prueba recaía sobre el apelado, y que en el presente caso este último se limitó a alegar que su despido fue injustificado sin exponer hechos específicos que sustentaran tal aseveración.

La Ley Núm. 2, *supra*, establece un mecanismo sumario dirigido a la rápida consideración y adjudicación de reclamaciones laborales. Su característica esencial es la celeridad, por lo que los tribunales vienen obligados a exigir diligencia y prontitud en su tramitación. *Rodríguez Gómez v. Multinational Ins.*, supra, pág. 569; *Vizcarrondo Morales v. MVM, Inc.*, supra. En cuanto al foro judicial donde puede presentarse la reclamación, la Sección 1 de la Ley Núm. 2, *supra*, dispone que el empleado podrá comparecer ante la sala del lugar donde realizó el trabajo o donde resida al momento de la reclamación. El texto estatutario es claro. Al utilizar lenguaje permisivo, el legislador reconoció al trabajador la facultad de escoger entre los foros autorizados por ley. No corresponde al patrono sustituir esa selección ni imponer el foro que le resulte más conveniente.

En el presente caso, surge del expediente que el señor Rodríguez residía en Guaynabo, pero también que Gauss ubica físicamente en la calle Georgetti #4 de Río Piedras, San Juan, y que

allí estaban las facilidades patronales. Además, el TPI determinó como hecho probado que, aunque el apelado podía laborar desde distintos lugares por la naturaleza de sus funciones, su lugar de empleo y centro de trabajo estaba ubicado en San Juan. A base de ello, concluyó que la *Querella* fue presentada en una sala con competencia y jurisdicción. No encontramos error en esa determinación. Aun si el empleado realizaba algunas labores remotas o desde su residencia, ello no elimina que también laborara desde las instalaciones patronales en San Juan. La Ley Núm. 2, *supra*, no exige exclusividad de un solo lugar de trabajo para activar la competencia del foro. Basta con que el empleado haya laborado allí o que ese fuera su centro de trabajo. Por tanto, las alegaciones de Gauss dirigidas a sostener que únicamente procedía radicar en Guaynabo carecen de apoyo en el texto de la ley y en los hechos determinados por el TPI.

Tampoco nos persuade el argumento de que la *Querella* se presentó en San Juan para "reducir artificialmente" el término para contestar. El ejercicio de una facultad expresamente conferida por ley al trabajador no constituye maniobra impropia. Del mismo modo, el diligenciamiento del emplazamiento dentro del término permitido por las Reglas de Procedimiento Civil no invalida el proceso ni altera el término dispuesto por la Ley Núm. 2, *supra*. Si la apelante entendía que necesitaba tiempo adicional, el remedio disponible era solicitar oportunamente una prórroga juramentada dentro del término original, según exige la jurisprudencia. *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 930. No lo hizo.

En consecuencia, al haberse presentado la *Querella* en el mismo distrito judicial donde se promovió la acción y donde ubican las facilidades patronales reconocidas por el TPI, el término aplicable para contestar era el de diez (10) días dispuesto en la Sección 3 de la Ley Núm. 2, *supra*. La contestación presentada por Gauss el 10

de diciembre de 2025 resultó tardía, pues el término había vencido el 8 de diciembre de 2025. En ese extremo, procede confirmar al TPI.

Ahora bien, ello no dispone totalmente del recurso. Aunque la rebeldía conlleva que se tengan por admitidos los hechos bien alegados, no garantiza automáticamente toda cuantía solicitada. *Continental Ins. Co. v. Isleta Marina,* supra, pág. 817. Cuando sea necesario determinar daños, corroborar alegaciones mediante prueba o investigar cualquier otro asunto, el tribunal debe celebrar las vistas necesarias. Regla 45.2(b) de Procedimiento Civil, *supra*; *Mitsubishi Motor v. Lunor y otros,* supra, pág. 824.

En este caso, del expediente no surge prueba documental ni evidencia recibida en vista que sustente las cuantías concedidas por concepto de mesada, salarios dejados de percibir y honorarios. Particularmente, la mesada requiere datos fácticos indispensables, tales como salario base, años computables de servicio y cualquier otro elemento pertinente bajo la Ley Núm. 80. Sin esa base probatoria, el TPI no estaba en posición de adjudicar sumas líquidas únicamente por referencia a lo alegado en la *Querella*.

En vista de lo anterior, aunque procede confirmar la determinación de que la *Querella* fue correctamente presentada en San Juan y que Gauss incumplió con el término de diez (10) días para contestar, corresponde revocar parcialmente la *Sentencia* en cuanto a las cuantías concedidas y devolver el caso al TPI para la celebración de una vista evidenciaria limitada a la prueba de los remedios económicos reclamados, particularmente la mesada y cualquier partida accesoria que dependa de dicha determinación.

IV.

Por los fundamentos antes expuestos, modificamos el dictamen apelado y así modificado confirmamos. Además, se devuelve el caso al TPI para la continuación de los procedimientos, conforme a lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                         Lcda.  Lilia M. Oquendo Solís
                    Secretaria del Tribunal de Apelaciones